PPX ENTERPRISES, INC. and Edward Chalpin, Plaintiffs,

v.

Barry I. FREDERICKS, Defendant.

Barry I. Fredericks, Counterclaimant,

v.

PPX Enterprises, Inc. and Edward Chalpin, Counterclaim Respondents.

No. 96 Civ. 0050(CBM).

United States District Court, S.D. New York.

April 28, 2000.

ceeding." This change simply replaces "Blys-     tad" with "Dreyfus."

Law Offices of Barry I. Fredericks, by Barry I. Fredericks, New York City, for Counterclaimant.

Law Offices of Andre L. Ferenzo by Andre L. Ferenzo, New York City, for Counterclaim Respondents.

## *OPINION*

MOTLEY, District Judge.

This action, a counterclaim in a legal malpractice matter, was brought, *pro se*, by Barry I. Fredericks ("Fredericks") against his former clients, PPX Enterprises, Inc. ("PPX") and the president of PPX, Edward Chalpin ("Chalpin"), for unpaid legal fees. PPX and Chalpin, plaintiffs in the underlying matter, filed the complaint commencing the action on August 21, 1995 in the New York Supreme Court against Fredericks, alleging legal malpractice and breach of contract. Fredericks counterclaimed for unpaid legal fees. Fredericks later removed the case to the United States District Court for the Southern District of New York on the basis of diversity of citizenship.

In an earlier opinion in this case, Judge Kimba Wood dismissed plaintiffs' complaint and found that the only claim remaining for trial was Fredericks' counterclaim for legal fees relating to his work in the matter of *PPX and Dimensional Sounds v. Rutgers University* ("the *Rutgers* case"). The case was reassigned from Judge Wood to this court on August 26, 1999. The matter was tried before this court in a bench trial from November 29, 1999 to December 1, 1999.

Based on the stipulations of fact between the parties, the trial testimony and the exhibits submitted at trial, this court makes the following Findings of Fact and Conclusions of Law in favor of respondents, PPX and Chalpin.

## FINDINGS OF FACT

### I. THE PARTIES

1. Counterclaimant, Barry I. Fredericks, was at all times relevant to this dispute, a

citizen of the State of New Jersey residing in Woodcliff Lake, New Jersey. (Notice of Removal ¶ 10). Fredericks is an attorney with his own law firm, The Law Offices of Barry Fredericks, which operates out of an office in Englewood Cliffs, New Jersey. (Trial Transcript at 115) ("Tr. at ...").

2. Counterclaim Respondents ("Respondents") are an entertainment company, PPX Enterprises, Inc., and its president, Edward Chalpin. Respondent Chalpin is the president and operating officer of PPX, domiciled in the State of New York.[1] (Tr. at 202). Respondent PPX is a corporation which manages and represents entertainers, publishes music and produces records. PPX is incorporated in the State of New York and maintains a principal place of business in New York City. (Tr. at 342–43). Also involved in these proceedings is Dimensional Sound ("Dimensional"), a corporation which runs a recording studio. Dimensional is wholly owned by Respondent Edward Chalpin while PPX is owned by his brother, Simon Chalpin. (Tr. at 202–208, 343).

## II. THE DISPUTE

### A. Events Leading to the Rutgers Litigation

3. In June or July of 1986, Dimensional faced a rent increase as its 20–year lease ended at its offices on 301 West 54th Street in New York City. (Tr. at 345–46).

4. Instead of renewing the lease, in July of 1986, Chalpin entered into an agreement with Rutgers University on behalf of Dimensional and PPX for the use of office space on Rutgers' campus. (Tr. at 345–46). This agreement provided PPX and Dimensional with rent-free office and storage space. (Tr. at 345–49). In accordance with the agreement, PPX and Dimensional transferred their recording equipment from the West 54th Street location to Rutgers University in exchange for allowing Rutgers to use the equipment for teaching purposes. (Tr. at 345–49). The agreement also called for PPX and Dimensional

to eventually donate the equipment to Rutgers and obtain a tax benefit from the gift. (Tr. at 26, 346; Ex. 1, ¶ 8).

5. In order to determine the amount of the donation to Rutgers, Chalpin had the equipment appraised by two independent appraisers. (Tr. at 349). In a June 2, 1986 letter, Charles Leighton of JAC Recording determined the fair market value of the equipment to be $850,000.00. (Trial Exhibit 4). In a June 12, 1986 appraisal, Bill Scranton of Boynton Studio assessed the value of each piece of recording equipment in the studio, calculating the equipment to be worth $815,759.00 altogether. (Ex. 5).

6. Chalpin eventually became dissatisfied with Rutgers' services and, on or about June 29, 1988, sought to terminate the contract with Rutgers. (Tr. at 350–351; Ex. 1 at ¶ 9). In terminating the agreement, Chalpin made arrangements with Rutgers for the removal of the recording equipment. (Tr. at 350–354). According to these arrangements, Chalpin was to provide trucks and workers to pick up the equipment and Rutgers was to deliver the equipment to a loading dock to facilitate the equipment removal. (Tr. at 351).

7. Chalpin scheduled multiple pickups under this arrangement from the time of the termination of the original agreement until 1991. (Tr. at 351–353). In a January 25, 1991 letter to Chalpin, Virgina Record, Associate Provost at Rutgers, acknowledged that Chalpin had picked up "most of the workable equipment," and requested that he promptly remove the remaining equipment. (Ex. E). Between January and June of 1991, Chalpin continued to pick up equipment from Rutgers, creating an inventory of items removed for most of the pick-ups. (Ex. G, H, I, J, M, N, R). In a handwritten note accompanying the March 31, 1991 inventory, Chalpin commented that some of the equipment at Rutgers was dirty, damaged and carelessly piled together. (Ex. N).

---

1. Although Chalpin maintains two residences, one in New York, one in New Jersey, Chalpin is a New York domiciliary. (May 20, 1996 Order of Judge Wood).

8. Chalpin did not remove all of the equipment from Rutgers during the 1991 pickups. (Tr. at 362). Between January and July of 1991, Rutgers sent Chalpin several letters complaining that a significant amount of equipment had been left at Rutgers, demanding that Chalpin remove the remaining equipment. (Ex. E, K, L, P).

## B. The Filing of *Dimensional Sound, Inc., and PPX Enterprises v. Rutgers University*

9. In late 1991, Chalpin retained the firm of Rudd, Rosenberg, Mitofsky & Hollender ("Rudd") to represent PPX and Dimensional in an action against Rutgers for conversion and breach of contract. (Ex. A, D).

10. In a October 10, 1996 deposition in the instant case, Chalpin briefly described the relief he was seeking from the Rutgers lawsuit:

Q. What were you seeking from Rutgers?

A. $850,000 worth of equipment and the equipment back, whatever was left.

(Tr. at 228–229).

11. Mr. Lindsay Rosenberg was the partner from the Rudd firm assigned to represent PPX and Dimensional in the Rutgers case. (Tr. at 16–18). Mr. Rosenberg interviewed the client, supervised the case and worked on the complaint. (Tr. at 18). During the representation, Chalpin told Mr. Rosenberg that he was seeking $850,000 in damages for the equipment that Rutgers was holding, as Mr. Rosenberg testified at trial:

Q. (record read) Does that line refresh your recollection as to whether you had any information about whether or not Rutgers was pressing for the removal of the equipment?

A. I believe it does. My recollection is that Mr. Chalpin had told me that he was trying to get his equipment and was being barred from doing so.

Q. By whom?

A. By Rutgers.

Q. Did Mr. Chalpin tell you that the equipment that Rutgers was holding was worthless?

A. No, he did not.

Q. Did he ask you to commence an action to recover the value of the equipment that Rutgers was holding?

A. Yes, he did.

Q. What did he tell you he wished to seek as compensation for the value of the equipment that Rutgers was holding at that time?

A. He had stated that the equipment was worth $850,000, and that's what I should seek to recover for the inability to recover the equipment.

(Tr. at 21).

12. During the process of negotiating the terms of the retainer agreement between Rudd and Chalpin, Mr. Rosenberg sent a proposed retainer agreement to Chalpin dated November 22, 1991. (Ex. A). Chalpin did not countersign the November 22, 1991 proposal. (Ex. A). He did, however, insert several handwritten edits into the proposal, including changing a sentence which read:

In the event that we are successful, then upon the resolution of your claims, whether by negotiation, litigation or in a sum equal to 25% of any recovery that we obtain, whether that recovery is in the form of a cash payment, an offset to a liability which you owe to Rutgers University or by receipt of an object or right of monetary value.

to read:

In the event that we are successful, then upon the resolution of your claims, whether by negotiation, litigation or otherwise, you will pay to us the contingency portion of the fee in a sum equal to 25% of any cash recovery that we obtain.

(Ex. A.). The November 22, 1991 draft was not the final version of the agreement between Chalpin and Rudd. (Tr. at 41–42). The final retainer agreement was executed on December 4, 1991. (Ex. D). The

agreement was not submitted into evidence at trial.[2]

13. On April 3, 1992, Mr. Rosenberg filed a complaint on behalf of PPX and Dimensional against Rutgers, seeking a total of $2,000,000 for breach of contract and conversion. (Ex. 1). Mr. Rosenberg prepared the complaint based solely on information gained from conversations with Mr. Chalpin. (Tr. at 22). The complaint alleges that the recording equipment "[h]ad an agreed upon value of $850,000." (Ex. 1 ¶ 9).

14. With respect to the contract with Dimensional, the complaint charges Rutgers with breaching the contract by: (1) failing to remove equipment from the 301 W. 54th Street studio; (2) failing to properly reinstall equipment; (3) failing to provide the office space initially designated by the parties; (4) failing to protect the equipment from damage; (5) failing to maintain the equipment in good working order; (6) failing to establish a fully functioning recording studio; (7) failing to provide Dimensional with unrestricted access to the recording studio; (8) failing to provide Dimensional and Chalpin with agreed upon services and privileges; (9) failing to structure an agreement which provided for the transfer of the recording equipment as a donation and (10) continuing to interfere with the lawful removal of the recording equipment. (Ex. 1 ¶¶ 6–10).

15. As to PPX, the complaint alleges that PPX was the intended and disclosed third party beneficiary of the contract between Rutgers and Dimensional, and that Rutgers breached its contractual obligations to PPX by: (1) failing to promote the use of PPX's library of sound recordings; (2) failing to pay PPX half of the income derived from promoting the recordings; (3) failing to provide PPX with an adequately decorated office space; (4) failing to provide PPX with unrestricted access to the recording studio; (5) failing to safeguard PPX's recording tapes; (6) deliberately causing PPX a major loss of business and (7) continuing to interfere with the lawful removal of the recording equipment. (Ex. 1 ¶¶ 11–16).

16. Rutgers counterclaimed for the fair rental value for the storage of the equipment after the termination of the contract. (Tr. at 107).

17. Mr. Rosenberg made no arrangements to retrieve equipment from Rutgers on behalf of PPX or Dimensional. (Tr. at 49).

18. In November of 1992, Chalpin became dissatisfied with Rudd's legal services, complaining of "lack of diligence" and failure to return Chalpin's phone calls. (Ex. C).[3] Subsequently, on January 7, 1993, Chalpin discharged the firm, terminating Rudd's representation of Dimensional and PPX in the Rutgers litigation. (Ex. D).

## C. Barry Fredericks' Representation in *Dimensional Sound, Inc., and PPX Enterprises v. Rutgers University*

19. On January 14, 1993, Chalpin hired Barry Fredericks to represent him in the matter of *Dimensional Sound, Inc., and PPX Enterprises v. Rutgers University.* (Ex. 2). The retainer agreement provides for an initial retainer of $5,000 and a contingent fee "[e]qual to 25% of any monies recovered from any source." (Ex. 2). The agreement does not specifically state whether the contingency fee applies to

---

**2.** Respondents submitted a December 4, 1991 draft of the retainer agreement after trial. (Affidavit in Opposition to Rule 201(b) Motion). This document was submitted to the court without authentication or proof of its genuineness. The contract was signed by Lindsay Rosenberg but was not countersigned by Chalpin. Thus, the draft submitted does not represent the final agreement between Chalpin and Rudd.

**3.** The document marked exhibit "C" in evidence is referred to as exhibit "B" in the trial transcript. All references to exhibit "C" in this opinion refer to the document marked exhibit "C" in evidence, the January 4, 1993 letter from Ed Chalpin addressed to Lindsay Rosenberg.

property recovered during the representation. (Ex. 2). Chalpin signed the agreement as President of PPX Enterprises.[4] (Ex. 2). Throughout the representation, Fredericks was the only attorney representing the plaintiffs in the Rutgers litigation. (Tr. at 73,124, 146–147).

20. Chalpin told Fredericks that one of the claims he was pursuing against Rutgers was a claim for conversion of the equipment. (Tr. at 170). Chalpin indicated that he did not want the equipment returned, rather, he wanted $850,000 in damages for the conversion of the equipment. (Tr. at 170).

21. Rutgers was represented by the law firm of Dunn, Pashman, Sponzilli & Finnerty ("Dunn Pashman"). Edward Sponzilli was the partner from Dunn Pashman assigned to the *Rutgers* case. (Tr. at 57–58). Between April 1992 and November 1993, Fredericks made arrangements with Sponzilli for the retrieval of the remaining equipment. (Tr. at 69–70; Ex. 6). After Fredericks informed Chalpin of the arrangements with Sponzilli, Chalpin agreed to retrieve the equipment. (Tr. at 172). PPX elected to accept the return of the equipment in settlement of its claim for $850,000 in damages for conversion. (Joint Pre–Trial Order at 4).

22. On May 29, 1992 Rutgers sent Fredericks an inventory of the equipment that remained in the Rutgers offices. (Tr. at 132). The inventory lists the description, manufacturer, model number and serial number for each piece of equipment, but does not include a statement of the present value of the equipment. (Ex. 6).

23. As a result of the arrangements made by Fredericks and Sponzilli, Chalpin went to Rutgers on at least two occasions to retrieve equipment.[5] (Tr. at 69–70, 86–87, 97; Ex. 8). Roland Belanger, an electronic technician who assisted Chalpin in the pickups, described the remaining equipment as "[a] big pile of junk." (Tr. at 323).

24. In a November 24, 1993 letter, Richard Jacobsen, an associate from Dunn Pashman, informed Fredericks that Chalpin had not yet removed all of the remaining equipment. (Ex. 8). According to Jacobsen's letter, Chalpin was unable to remove all of the remaining equipment during the two trips because he arrived both times with inadequate moving vehicles. (Ex. 8).

25. Both Rutgers and Chalpin memorialized the removals with inventories and receipts. An associate from Dunn Pashman oversaw each pickup and obtained a signed receipt from Chalpin. (Tr. at 109). Chalpin was present at both of the pickups. Chalpin used the May 29, 1992 inventory as a checklist, inserting his initials next to each item of equipment retrieved. (Tr. at 422–423, 326–327). Fredericks did not accompany Chalpin on either of these occasions. (Tr. at 378).

26. In an October 15, 1993 letter, Fredericks notified Chalpin that he was indebted to Fredericks "[i]n an amount equal to twenty-five per cent (25%) of the cash value of the property" recovered in connection with the Rutgers action. (Ex. 7). In the letter, Fredericks requested an accounting listing the cash value of the property recovered.[6] (Ex. 8). Chalpin did not

---

**4.** Fredericks represented Chalpin in several different matters. (Tr. at 117,198). Chalpin signed retainer agreements as the President of PPX Enterprises even when Fredericks was representing Chalpin as an individual. (Tr. at 198–202; Ex. 24).

**5.** There is evidence that Chalpin went to Rutgers on two or three other occasions during this period. On one of these trips, Chalpin and one of his workers, Roland Balanger, went to Rutgers to retrieve the equipment, but they were unsuccessful because the proper arrangements were not made in advance.

(Tr. at 252, 321). The other trips involved Chalpin's bringing outside parties to view the equipment. (Ex. 8).

**6.** On this same day, October 15, 1993, Chalpin wrote a letter to Fredericks suggesting that Fredericks planned to withdraw from the case and disputing any "unjust billings." (Ex. F). In an October 18, 1993 response letter, Fredericks represented that he had no intention of withdrawing from the case at that time, and issued a second request for an accounting. (Ex. 14).

produce any such accounting. (Tr. at 138) Chalpin did obtain an oral appraisal of the equipment that was held at Rutgers as of May 29, 1992, but he did not have the appraisal reduced to writing.[7] (Tr. at 427–429). According to Chalpin, the equipment had no value. (Tr. at 250, 428). Fredericks did not, at any time, personally inspect the equipment or obtain an appraisal of the equipment retrieved.[8] (Tr. at 155).

27. After a dispute between Fredericks and Chalpin regarding the removal of the equipment and coordination of discovery, Fredericks made a motion to withdraw from the case. (Tr. at 139). The court granted Fredericks' request in May of 1994. (May 28, 1997 Report and Recommendation of Judge Eaton at 12).

### D. The Resolution of *Dimensional Sound, Inc., and PPX Enterprises v. Rutgers University*

28. Following Fredericks' withdrawal, Chalpin retained Mr. Taddeo to represent the plaintiffs in the Rutgers litigation. (Tr. at 107).

29. During Taddeo's tenure, Rutgers obtained a court order demanding that Chalpin remove the remainder of the equipment from the Rutgers offices. (Tr. at 64,107–108). In compliance with this order, the balance of equipment was thereafter retrieved from Rutgers. (Tr. at 64, 107–108).

30. Taddeo was later substituted by another firm, Caro & Graifman. (Tr. at 97). On May 7, 1996, the parties agreed to settle the case. (Tr. at 97–98; May 28, 1997 Report and Recommendation of Judge Eaton at 13). Pursuant to the settlement agreement, Rutgers paid an undisclosed sum of money to PPX. (Tr. at 98–100). At the time, PPX and Dimensional were both owned by Simon Chalpin and were treated by Rutgers as one entity for the purposes of the settlement payment. (Tr. at 100).

### CONCLUSIONS OF LAW

█ 31. This case is a simple breach of contract matter. As in most civil cases, the burden in this case is on the party bringing the claim to prove the claim by a fair preponderance of the credible evidence. After analyzing the evidence presented in this case, this court finds that counterclaimant has not satisfied his burden.

32. In determining whether Fredericks is entitled to recover a contingency fee for his work in the Rutgers litigation, the court must address three issues: (1) what equipment was recovered due to Fredericks' efforts; (2) what was the value of that equipment and (3) whether the retainer agreement entitled Fredericks to a percentage of the cash value of the equipment. Upon evaluating the evidence and testimony presented at trial, the court finds that Fredericks has failed to present any credible evidence to support his claim for unpaid legal fees. Fredericks has failed to identify which equipment was recovered during his tenure or submit any credible evidence assessing the value of that equipment. Without proof of the value of the equipment, the court is left with no rational basis for assessing the amount owed, the damages on this counterclaim. Therefore,

---

7. On September 29, 1994, the plaintiffs in the Rutgers litigation submitted an unsigned expert report stating the present day value of some of the equipment retrieved from Rutgers. (*Dimensional Sound, Inc. and PPX Enterprises v. Rutgers University,* January 9, 1996 Opinion and Order at 4). This report was prepared by the attorney who was representing PPX and Dimensional at the time. (*Dimensional Sound, Inc. and PPX Enterprises v. Rutgers University,* January 9, 1996 Opinion and Order at 4). The report was precluded because it was incomplete and was not pre-

pared by an expert. (*Dimensional Sound, Inc. and PPX Enterprises v. Rutgers University,* January 9, 1996 Opinion and Order at 5–12).

8. Fredericks created a table in preparation for this trial summarizing the 1986 appraisals and the May 1992 Rutgers inventory. (Ex. 23, Tr. at 147–149). This summary is not an appraisal–Fredericks did not inspect the equipment or consult an expert in calculating the value of the equipment included in the summary. (Tr. at 155).

the court finds Fredericks has not satisfactorily proved his counterclaim for unpaid legal fees. Because the court finds that Fredericks has failed to prove damages, the court will not reach the issue of Fredericks' rights or respondents' liabilities under the retainer agreement.

## I. EVIDENCE IDENTIFYING THE EQUIPMENT RECOVERED

■ 33. Fredericks has not presented any evidence that adequately identifies which equipment was recovered during his tenure as counsel to PPX. In identifying the equipment relevant to his case, Fredericks submitted a May 1992 inventory provided to him by Rutgers. (Tr. at 62–63, Ex. 6). The inventory lists, in detail, the equipment that was being held by Rutgers as of May 29, 1992. (Ex. 6). During his tenure as respondent's counsel, Fredericks and Rutgers' attorney, Edward Sponzilli, arranged for two equipment pickups between April 1992 and November 1993. (Tr. at 69–70, 86–87, 97; Ex. 8). Chalpin removed some equipment pursuant to these arrangements but left a significant amount of equipment in the Rutgers offices after the two pickups. (Ex. 8). Hence, the May 1992 inventory alone is insufficient to show which equipment Fredericks was instrumental in recovering.

34. In order to support a logical conclusion as to which equipment was retrieved due to Fredericks' efforts, the evidence must either specifically identify the items picked up from Rutgers or compare the items being stored before the pickups with the items left after the second pickup. Indeed, there is trial testimony suggesting that such evidence exists. For instance, Chalpin testified that he countersigned the May 1992 inventory to indicate which pieces of equipment were retrieved during each of the pickups. (Tr. at 422–423, 326–327). Also, Rutgers' attorneys kept records and receipts of the two pickups. (Tr. at 109). None of these documents, however, have been entered into evidence. Certainly, Fredericks, as counsel in the matter, could have kept his own records of the removals, but he failed to do so. Freder-

icks neither attended either of the scheduled pickups, nor personally inspected the equipment at any time. (Tr. at 155, 378). Fredericks neglected to obtain documentation of the pickups or of the contents of the Rutgers studios after the two removals. Thus, Fredericks has failed to satisfy his evidentiary burden. Accordingly, the court finds that Fredericks has presented no credible evidence that identifies the equipment recovered during his tenure as counsel.

## II. EVIDENCE ESTABLISHING THE VALUE OF THE RECLAIMED EQUIPMENT

35. The evidence which Fredericks presented at trial is also insufficient to support a logical conclusion as to the value of the recovered equipment. At trial, Fredericks relied upon the following evidence in support of his claim for damages: (1) the 1986 appraisals; (2) the allegations in the *Rutgers* complaint; (3) Chalpin's representations regarding the value of the equipment and (4) a chart estimating the value of the equipment. An analysis of this evidence reveals that Fredericks has not presented any evidence accurately establishing the value of the equipment recovered through Fredericks' efforts.

### A. The 1986 Appraisals

■ 36. The 1986 appraisals do not present a logical basis for determining the value of the equipment retrieved in question. At trial, Fredericks submitted two 1986 appraisals into evidence, one from JAC Recording, the other from Boyton Studio. (Ex. 4,5). The JAC Recording appraisal was simply a brief letter stating that the present market value of the equipment was $850,000, and that installation would add approximately 20% to the value. (Ex. 4). The Boyton Studio appraisal was more detailed, listing the value of every individual piece of equipment, estimating the total value of the equipment to be $815,759. (Ex. 5). Neither of these appraisals are useful in determining the val-

ue of the equipment retrieved in 1992 and 1993. With six to seven years between the appraisals and the retrievals, the 1986 appraisals do not accurately assess the value of the equipment in question.

37. As respondents correctly argue, the value of the equipment certainly changed between 1986 and 1993 due to depreciation and ordinary wear and tear. It is undisputed that the equipment was used as a studio by both Chalpin and Rutgers during those years. Everyday wear and tear undoubtedly decreases the value of recording equipment. There is also evidence that the equipment may have been misused or damaged during the time it was at Rutgers. (Ex. N, Tr. at 323). Indeed, it is even possible that some of the equipment may have increased in value. For example, certain equipment may be considered rare or a collector's item, thereby increasing in value over the years. There are countless factors which contribute to the value of any item in the marketplace. There is no doubt that at least some of these factors affected the value of the recording equipment in question over the course of six to seven years. Appraisals performed seven years before the removals are simply not evidence of the present fair market value of the equipment recovered. Therefore, the 1986 appraisals are insufficient to support a conclusion as to the value of the equipment retrieved through Fredericks efforts because they do not account for depreciation, everyday wear and tear, damage or appreciation.

### B. The *Rutgers* Complaint

38. The complaint in the Rutgers action is also insufficient to prove the value of the equipment. At trial, Fredericks introduced the complaint from the Rutgers litigation as proof that the value of the equipment at the time the complaint was filed was $850,000. The complaint provides, in pertinent part:

9. As a result of Defendant Rutgers breach of contract as aforesaid, Plaintiff Dimensional acted on or about June 29, 1988 to terminate the said contract and, thereafter, sought to remove the Equip-

ment. Defendant Rutgers has continued to interfere with the lawful removal of the Equipment. The Equipment had an agreed upon value of $850,000.00.

(Ex. 1). Fredericks argues that the inclusion of the $850,000 figure is proof that the equipment must have been worth $850,000 at the time of the complaint. The court finds that there is no logical support for this argument. According to the Federal Rules of Civil Procedure, when a party makes a pleading in a case, the party is certifying that "[t]he allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed.R.Civ.P. Rule 11(b)(3). Thus, any pleading in a complaint is merely an estimation–an educated guess to be substantiated after further investigation. Likewise, in the *Rutgers* complaint, the reference to the agreed upon value of the equipment represents plaintiff's estimation of the equipment's value. Lindsay Rosenberg, the attorney who drafted the complaint, testified that the figure was based solely upon discussions with Chalpin. (Tr. at 22). Rosenberg did not evaluate or appraise the equipment before inserting the figure into the complaint. Thus, the statement in the Rutgers complaint was based neither on precise figures nor concrete evidence–it was simply an estimation that the attorney believed would be substantiated after further pre-trial preparation. Accordingly, the court finds that the complaint is not proof of the value of the equipment.

### C. Chalpin's Representations Regarding The Equipment's Value

39. Chalpin's statements regarding the value of the equipment are not credible proof of the value of the equipment. Throughout the trial, Fredericks introduced evidence of Chalpin's representations suggesting that the equipment was worth $850,000. According to Rosenberg, Chalpin told him that the equipment was worth $850,000 when the Rudd firm was

retained, in 1991. (Tr. at 21). In a 1996 deposition, Chalpin testified that he was seeking "$850,000 worth of equipment and the equipment back, whatever was left" in the Rutgers litigation. (Tr. at 228–229). Also, Fredericks submitted notes from his meetings with Chalpin immediately prior to his retention in which Fredericks noted that Chalpin sought equipment worth $850,000. (Ex. 3). Fredericks testified that the notes were based on Chalpin's representations as to value of the equipment at the time Fredericks was retained. (Tr. at 120–121). Even if the court believes these statements, they do not constitute proof of the value of the equipment. There is no proof that the statements were made after an evaluation or appraisal. Fredericks has not submitted any corroborating evidence to suggest that these statements were based on anything more than Chalpin's speculation or conjecture. Furthermore, Chalpin has contradicted these statements himself at trial, when he suggested that the equipment was worthless in 1986:

> Q. Mr. Chalpin, did you have expert witness reports prepared in connection with these statements in these letters?
> A. Not to the amount—I was going to have a witness that was going to be prepared to say what they were valued in 1986 versus what they were valued in '92 or '93 or whatever and all of the damaged equipment. In other words, it was my intention to estimate the value later on, what it was worth. *It was garbage in 1986[.]*

(Tr. at 410)(emphasis added). Hence, not only are Chalpin's statements speculative in nature, but Chalpin's reflections are also contradictory. Accordingly, the court finds that Chalpin's representations are not a credible basis for assessing the value of the equipment.

**D. Chart Estimating The Equipment's Value**

■ 40. At trial, Fredericks submitted a chart comparing the 1986 Boyton Studio appraisals with the May 1992 inventory, calculating the total value of the recovered equipment to be $139,921. (Ex. 23). This chart, like the 1986 Boyton Studio appraisal, is not probative of the value of the equipment for time period relevant to this case. In preparing the chart, Fredericks did nothing more than merge data from the Boyton Studio appraisal and the May 1992 inventory. As discussed above, those two documents are not proof of the value of the equipment because they neither properly identify the equipment recovered nor accurately assess the value of the equipment at the time of recovery. The chart does not correct any of these deficiencies.

■ 41. In his brief, Fredericks argues that the court should accept his chart in lieu of more accurate evidence of the value of the equipment because he faced an "intentional handicap" as a result of respondents' failure to produce expert witness reports establishing the value of the equipment. (Plaintiff's Findings of Fact and Conclusions of Law at 29–30). The court rejects this argument. The expert reports that Fredericks refers to were mentioned in a January 6, 1996 opinion of Judge Cote in the *Rutgers* case. (*Dimensional Sound, Inc. and PPX Enterprises v. Rutgers University,* January 9, 1996 Opinion and Order)("January 9, 1996 Opinion and Order"). Certainly, Fredericks had access to this opinion prior to the commencement of this trial. Fredericks did not ask the court to compel discovery or notify the court of respondents' alleged delinquency during discovery. Fredericks' failure to address respondents' alleged refusal to produce the reports in a timely manner is an insufficient cause for a grant of leniency with respect to a plaintiff's evidentiary burden. Moreover, as stated in Judge Cote's January 6, 1996 opinion, the expert report only assessed the damage done to certain large pieces of equipment:

> This report is limited to what they describe as damage to some of the larger items. The expert noted that much of the equipment that he had viewed at Rutgers had been cannibalized and re-

quired testing and replacement parts. He also asserted that he could do no more than estimate the cost of repair ... [f]or only 15 of the items did the expert describe in any way the damage to the particular piece of equipment.

(January 9, 1996 Opinion and Order at 6–7). An expert report assessing the damage done to the equipment is not the equivalent of a report appraising the present value of the same. Even if this report had been produced by respondent, it would not have provided credible evidence of the value of the equipment. Fredericks' case has not been affected by the absence of this expert report. Therefore, the court rejects plaintiff's arguments and finds that Fredericks' chart comparing the Boyton appraisal and the May 1992 inventory is an unreliable basis for ascertaining the value of the equipment.

## CONCLUSION

42. For the foregoing reasons, the court finds that counterclaimant has failed to satisfy the burden of proof on his counterclaim for unpaid legal fees. Accordingly, the court finds in favor of respondents. SO ORDERED.